## WAYDELL *vs.* VELIE.

*In the matter of the Estate of* WALTER T. VELIE, *deceased.*

WHERE an administrator of a solvent estate in pursuance of an agreement to pay a particular sum in discharge of the debt of his intestate at a certain time, shortly after that period, transmits the money in bank bills by mail, and the creditor who had previously been vigilant in the prosecution of his claim, makes no further demand to the time of his death, 18 months after, and his executors subsequently apply for an order for the payment of the demand.—Held, that under the circumstances, there was sufficient to justify the probability of a receipt of the money by post, and the presumption of payment.

S. HUMPHREY, *for Petitioner.*
THOMPSON & WEEKS, *for Contestants.*

THE SURROGATE. The intestate having been indebted to John Waydell, in the sum of $581, upon a judgment,

Velie, his administrator, who lived at Poughkeepsie, came to New-York, the residence of Waydell, and paid him $400, Waydell agreeing to throw off the interest, and to receive the face of the debt. This was on May 29, 1846, and the explicit understanding was, that the balance $181, should be paid in the ensuing September, and was to be in full of the judgment.

About the end of September or the first of October, Velie, the administrator, inclosed the sum of $181, in bills on Poughkeepsie banks, in a letter directed to John Waydell, at 36 Dover Street, New-York, his place of business, and deposited the letter in the Poughkeepsie Post Office. This fact is incontrovertibly established. On the other hand, Mr. Waydell's son, who was his clerk at the time, and was in the habit of opening his father's letters and attending to his business, and who is now one of his executors, shows as far as he can by negative testimony that the money was never received.

If the money had been lost, I should have no hesitation in charging the party who was bound to make the pay- ment, with the risk of transmission, for he had no right to send the funds in the way he did, without special direc- tions to that effect from the creditor, and such a special authority has not been proved.

There is another view of the case, however, upon which it is not possible perhaps to come to so satisfactory a con- clusion.

The judgment in question was recovered in December, 1837. The intestate, Velie, died, and letters of administra- tion upon his estate issued in February, 1846. The inven- tory was filed, May 29, 1846, the same day the payment of the $400 was made. Waydell, the creditor, seems to have taken legal advice as to his claim previous to that time, and to have been sufficiently alive and vigilant as to his interests. A set time is fixed for the payment of the ba- lance ; if the sum agreed upon were not paid then, Way- dell would be restored to his demand for some eight years' interest against a solvent estate. That time arrives, the

creditor is heard to wonder why the money had not been sent; at length it is somewhat tardily, after the time, deposited in the Post Office, at Poughkeepsie; and then there is an utter silence, a failure to call upon the administrator, either for the balance as agreed upon, or the difference due on the judgment with the arrears of interest, until March, 1848, when Waydell died, without having made any further claim, instituted any proceedings, or given to the administrator an intimation that he had not complied with his agreement. It is true no trace of the administrator's letter, nor any entry of the receipt of the money appears among the papers, or on the books of the deceased; and his son, who was familiar with his affairs, negatives as far as he can the receipt of the letter. But it is not to be overlooked on the other hand, that Waydell being dead, and the opportunity for his verification of the claim being lost, his executor's denial of the payment can have no greater weight, than a formal legal issue as to the fact. Nor can I, on the other side, attach any force to the answer of the administrator, as testimony; although his sworn statement, that the money was sent by mail to Waydell, pursuant to the directions of the latter, may serve to explain how he came to adopt that mode of transmitting the funds. The case then is narrowed down to a simple question of presumption of payment. Nothing is better established than that inferences may be drawn from the conduct of parties, the habits of society and the usages of business, which though not of a conclusive character, are a fair subject for consideration with a jury in determining a doubtful or nicely balanced case. The practice prevails in all Courts, for example, of allowing evidence of the transmission of letters by mail. This is sanctioned by numerous decisions, and it seems that generally, if a letter be sent by post, that is *prima facie* proof that the party to whom it was addressed, received it in due course of mail. (*Best. on Presumptions*, 178, 188, 182, 184; 18 *Johns. R.*, 451; *Phil. Ev.*, 1, 159; 1 *Esp. N. P. C.*, 296; *Hagedom* vs. *Reid*, 3

*Camp.*, 379; *Hetherington* vs. *Kemp*, 4 *Camp.*, 194; *Warren* vs. *Warren*, *C. M. & R.*, 252; *Kieran* vs. *Johnson*, 1 *Stark.*, 109; 3 *Stark.*, 64; 1 *Moody & M.*, 129.) Without going to that extent with regard to a letter containing money, I am still inclined under the peculiar circumstances of this case, to think it far more probable, that the money reached the hands of the creditor in New-York, than that it did not. The nearness of the post town, where the letter and money were deposited, to New-York; the knowledge of the creditor that the estate against which his claim existed, was solvent; the vigilance which he had previously shown towards collecting his debt; the fact that the administrator only acted in a representative capacity and might ordinarily be expected to wind up the estate with dispatch; the payment of a part and the specification of a certain fixed time for the liquidation of a balance agreed upon in compromise; the wonder expressed about the time when the money ought to have been forwarded, that it had not come; and then after the time it was sent, the absolute silence, and neglect of all proceedings to enforce the claim if it existed, up to the time of his death; all these circumstances lead my mind to the conclusion that the money transmitted by mail, reached the creditor Waydell. This seems to me the most probable, and now after the lapse of four years since the grant of letters to the administrator, and nearly as long a time since the deposit of the money in the Post Office, to the address of the creditor, and when too the whole estate has been distributed, and a second payment, if awarded, will have to be made by the administrator out of his own funds, I do not think it indulging in too violent a presumption, if I hold under the circumstances that the administrator has established a *prima facie* case of payment. I think a jury would have arrived at the same conclusion upon the facts, and I cannot, therefore, in the exercise of the discretion vested in me, order the payment of the petitioner's demand. The petition must therefore be dismissed, without costs, however, to either party.